Exhibit A

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Dachser USA Air & Sea Logistics, Inc. ("Defendant" or "Employer") and Fanchon Carey-Smalls, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.    **Consideration.**   In consideration for signing this Agreement, and complying with its terms, Defendant agrees:

a.    to pay to Employee **Nine Thousand Dollars ($9,000)** as wage income, less lawful deductions, within ten (10) business days after the later of: (1) Defendant's receipt of a signed copy of this Agreement; (2) Defendant's receipt of a signed copy of Exhibit A to this Agreement and (2) the Northern District of Georgia's approval of the Parties' settlement of Employee's claims under the Fair Labor Standards Act ("FLSA").

b.    to pay to Employee **Nine Thousand Dollars ($9,000)** as non-wage income for liquidated damages, to be reported by Employee as 1099 income within ten (10) business days after the later of: (1) Defendant's receipt of a signed copy of this Agreement; (2) Defendant's receipt of a signed copy of Exhibit A to this Agreement and (2) the Northern District of Georgia's approval of the Parties' settlement of Employee's claims under the Fair Labor Standards Act ("FLSA").

d.    to pay to The Law Office of Benjamin B. Kandy LLC **Six Thousand Dollars ($6,000)** as non-wage income, to be reported as 1099 income, within ten (10) business days after the later of: (1) Defendant's receipt of a signed copy of this Agreement; (2) Defendant's receipt of a signed copy of Exhibit A to this Agreement and (2) the Northern District of Georgia's approval of the Parties' settlement of Employee's claims under the Fair Labor Standards Act ("FLSA").

2.    **No Consideration Absent Execution of this Agreement.**  Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

3.    **General Release of All Claims.**  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, as well as Great American Insurance Company (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of

2

the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Age Discrimination in Employment Act of 1967 ("ADEA");

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

- The Equal Pay Act;

- The Fair Labor Standards Act ("FLSA");

- The Georgia AIDS Confidentiality Act, O.C.G.A. § 24-9-47;

- The Georgia Equal Pay Act, O.C.G.A. § 34-5-1, et seq.;

- The Georgia Age Discrimination in Employment Act, O.C.G.A. § 34-1-2;

- The Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. § 34-6A-1, et seq.;

- The Georgia Wage Payment and Work Hour Laws;

- any other federal, state or local law, rule, regulation, or ordinance;

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

4. **Acknowledgments and Affirmations.**

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Defendant, except Case No. 1:16-cv-02974-AT currently pending in the United States District Court, Northern District of Georgia.

Defendant affirms it has not filed, caused to be filed, or is presently party to any claim or counterclaim against Employee.

Employee also affirms that Employee has reported all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Defendant and will continue to maintain the confidentiality of such information consistent with Defendant' policies and Employee's agreement(s) with Defendant and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud. Both Parties acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

Employee shall not apply in the future for employment with Employer because of, among other things, irreconcilable differences with Employer.

Employee affirms that all of the Employer's decisions regarding Employee's pay and benefits through the date of Employee's separation of employment were not discriminatory

based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

Employee represents that she has not received Medicare benefits for the treatment of emotional distress in connection with her claims asserted against Defendant. Employee further represents that, if she has received treatment through the Medicare program for any accident, occurrence, injury, illness, disease, loss, claim, demand, or damages, such treatment was unrelated to her claims asserted against Defendant.

Employee hereby warrants and represents that she presently is not, nor has she ever been enrolled in Medicare Part A or Part B. Employee further represents that, if she has received treatment through the Medicare program for any accident, occurrence, injury, illness, disease, loss, claim, demand, or damages, such treatment was unrelated to her claims asserted against Defendant. Further, Employee represents and warrants that she has no claim for Social Security Disability benefits nor is she appealing or re-filing for Social Security Disability benefits.

Employee agrees to indemnify and hold Defendant and the other Releasees harmless from any claims of, or rights of recovery as a result of, any future payment which may be made by Medicare or any other entity for or on behalf of Employee for such future care. Employee agrees to hold harmless Defendant and the other Releasees for any loss of Medicare benefits or Social Security benefits Employee may sustain as a result of this Agreement and General Release. In addition, Employee agrees to release as part of this Agreement and General Release any right to bring any possible future action under the Medicare Secondary Payer Statute against Employee and the other Releasees.

Employee has been apprised of her right to seek assistance from legal counsel of her choosing or directly from the Social Security Administration or other government agencies regarding the impact this Release may have on Employee's current or future entitlement to Social Security or other governmental benefits. Employee acknowledges that acceptance of these settlement funds may affect Employee's rights to other governmental benefits, insurance benefits, disability benefits, or pension benefits. Notwithstanding this possibility, Employee desires to enter into this Agreement and General Release to settle her claims against Employer according to the terms set forth in this Agreement and General Release.

5.    **Non-Disparagement.** The parties agree that they shall not make any oral or written statements, or engage in conduct of any kind, that disparage, criticize, defame, communicate any false, negative or misleading information about one another, or any matter relating to Employee's relationship with Defendant, and/or, to the extent relevant, the circumstances surrounding Employee's claims against Defendant, or otherwise cast a negative characterization upon the other party. The parties further agree that they will not assist anyone else in doing so, or direct or encourage another to do so.

6.  **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.   Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

7.  **Nonadmission of Wrongdoing.**   The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

8.  **Amendment**.  This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

9.  **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.  EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE MAY REVOKE THIS AGREEMENT AND GENERAL RELEASE FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE.  ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO ERIC MAGNUS, COUNSEL FOR EMPLOYER AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE."  THE REVOCATION MUST BE PERSONALLY DELIVERED TO ERIC MAGNUS, OR MAILED TO ERIC MAGNUS AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE, DO NOT**

RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

DEFENDANT DACHSER USA AIR & SEA LOGISTICS, INC.

By: _____     By: _____
Fanchon Carey-Smalls                      Tracy Merry

7